Call the next case. 3-15-0080 Country Preferred Insurance Company Appellant by Keith Carlson v. Terry Whitehead Appellee by Robert R. Chalmers Mr. Carlson, you may proceed. Thank you, Your Honor. Of course, as the Court knows, this case is here for the second time. Previously, we're back here after the Supreme Court has found that the contraction limitation period, like many appellate courts throughout the state, many decisions universally have found is unambiguous, enforceable, and not against public policy. Here we have an accident in 2007, July 21st, involving an uninsured motorist claim. Actually, there were other claims as a result of that accident. Ms. Whitehead had medical payments coverage, which apply regardless of fault. She had a collision claim because her vehicle was damaged at the time of the accident. What I find, though, I want to mention at the outset here, throughout the briefing and the lower court's ruling, is this mixing of a claim and a demand for arbitration. They're often lumped together like the same thing, and they're entirely different. As noted by the Supreme Court when citing the Ryan versus State Farm case, notice of a claim or an accident is not equivalent to a demand for arbitration. Here, we have an insurance policy that has provisions about notice of a claim of an accident. In the general provisions, applicable to all the coverages, in the uninsured motorist provisions, there's a requirement to give notice immediately when you're involved in an accident, give particulars of the accident, who's involved, what happened, etc. Give proof of what damages were incurred. This is entirely separate provisions from the demand for arbitration provision that's been found so frequently to be enforceable and not against public policy. The Supreme Court and Whitehead talked in the end of their opinion about, and I know I mentioned in my brief a couple times, about the difference that a claim is not the equivalent of the legal action required by the policy to start a lawsuit or a demand for arbitration or take legal action. They looked at the record, the same record before you now, including the notice of uninsured motorist claim, various correspondence, communications, and the letter of October 6, 2009 from Lynn Hickey, Ms. Whitehead's attorney, who was representing her within the two years after the accident, and found that even that letter was not the equivalent of the legal action required to be commenced within two years to satisfy the limitation period, otherwise an uninsured motorist claim would be barred. And that letter sent after two years, obviously, because October 2009 for a July 2007 accident, is a letter that's first making an actual demand. It's not demanding arbitration, but it's making a claim for uninsured motorist benefits, saying my clients incurred these bills, here's the bills. She had a surgery, by the way the surgery was on May 18, 2009, and that she suffered a wage loss from May 18, 2009 to June 29, 2009, in the amount of $21,000, here's her tax return, here's the supporting documentation. All, of course, first time provided to the country. While a claim was open back at the time, shortly after the accident, and Andrea Dunmore was handling the claim, including the collision, med pay, and soliciting information, is there going to be an uninsured motorist claim with medicals, and what is it? She was the one, there was no sitting on a claim by Andrea Dunmore, it shows a very active person saying, okay, are you going to make a claim, are you going to make a claim, send us the medicals, send us the medicals. Finally, she hired an attorney. Dunmore recommended she get an attorney. The attorney, then she wrote to the attorney saying, well, give us the medicals and specials, and we'll consider your claim as follows from the two years. Just like a normal claim, like if you're filing, if you have an accident, and you're negotiating with an insurer without filing a lawsuit, and within the two years, it happens all the time, they might, you know, okay, give us information, okay, we'll wait for this surgery or this report, but you have to file a lawsuit within two years or it's time barred. It doesn't matter that you're negotiating or have a claim unless, for example, you say, well, we don't, we've reached an agreement, we're not going to file a lawsuit by agreement within two years while we continue to negotiate it, but that's never happened here. What counsel, I'm sure, is going to argue about is that there was a notice of uninsured motorist claim form. Again, as the claim sent back in 2007, November 9, 2007, which gave particulars of the accident, who was involved, what happened, which is required by the policy, by the separate provisions of the policy, is the notice. It doesn't make a demand for money of any kind. It doesn't provide any of the medical specials. The surgery didn't even take place until another almost two years later, a year and a half later, that she's seeking benefits for. It happened in May of 2009. This notice that there had been an accident is in 2007. So what we have here is a clear case of an accident having happened, notice being required, notice given, which is not contested, that there's going to be ultimately an uninsured motorist claim. We have involvement of an attorney who erroneously believed that, well, I'm an attorney, I know, since the accident happened in Wisconsin, that there's three years to make my uninsured motorist claim under this contract, but doesn't do anything within those two years. Does it, after two years, presents the claim more than two years and is responded to by country after the claim is made within six or seven days. Your claim is too late. You missed the statute of limitations, which, when you look at the file, whether it's called statute or contractual limitation period, it's the equivalent. And Andrea Dunmore, in her unconfirmed affidavit, repeatedly told Ms. Deenshurd about the two years. She wrote letters saying you have two years to present it. She constantly solicited information. She's not saying, well, here's, it's not a demand. We want $250,000 for a motorist claim and running away from it and, oh, we're not going to, and then wait for two years to pay and then, ha-ha, you didn't file suit. She's calling every 30 days. Are you ready to proceed? Do you have specials? Are you willing to handle your claim? And nothing. So I'm waiting. I might get surgery. I might get an attorney. I get an attorney. She's not, and then doesn't do anything until after the two years has passed. It's not, it doesn't fit any of the tolling cases whatsoever. There's not the proof of loss. Proof of loss talks in the case law and college insurance, you'll find the discussion of the proof of loss talking about the information to resolve a claim. What is the claim in the documentation? Here, it's not until October of 2009. After the two years has passed. The Supreme Court has told, even looked at this very letter and said that wasn't sufficient. You know, the council might talk about the Hale case and other arguments is that there was some sufficient communication that's equivalent to a demand for arbitration. You know, the Supreme Court cited the Ryan case, not the Hale case. The Ryan case disagreed with Hale about the need for a written demand for arbitration or filing suit. Actually, both are required within the two years. Council just cited an additional supplemental authority, a member-select for loose, which was granted leave to cite to, but I believe it supports country's position because that case, the issue was there was a request for arbitration, a written request for arbitration, and the court found, well, we don't see a significant difference between the word request and demand. Isn't the trigger for arbitration to even do the written demand, when country would reject the legal right to coverage and or the amount of the damages? I mean, the written demand, it says that, you know, if arbitration, if we in an insured disagree over whether you're legally entitled to coverage from the owner or operator of the uninsured or underinsured vehicle or if agreement cannot be reached on the amount, the insured must make a written demand. So doesn't that mean that there has to be a rejection before the demand? No, no, no, because then you would never, then it would never apply to whatever because you would never, until you rejected it, then you'd be two years out. So you go on for 10 years and there was never a demand made, then 10 years later there's a demand made, then you have two years from that point forward. That's the argument. But it says in the clause, it says, or if an agreement is not reached. It doesn't say if it's a demand or if agreement is not. So obviously if they haven't reached an agreement within two years, the case law in the clause says you must file suit. You must initiate the legal action required by the policy, as the Supreme Court said in Whitehead. You have to initiate that legal action within two years if an agreement has not been reached. And if you don't have a settlement, then you haven't reached an agreement. So the second clause of that, what you just quoted, or if an agreement is not reached. So obviously if you haven't settled the case, you haven't reached an agreement by definition, and therefore you must file suit within the two years or you're time-barred. There's no other ambiguity to that. Or if an agreement cannot be reached on the amount of damages, the issuer must make a written demand for arbitration. But if there is no, you know, so she, it's my understanding that she was told that the claim would remain open until she was diagnosed and released from care, and then they would evaluate the claim. So she sends this claim, finally she sends her demand or her notice or whatever, what she wants, in, what was it, in May or, or was it July of 2009? And then it's not until October 19th when the country says no. No, it's October 6th of 2009 that she sends her demand in. There's a letter from, so it's only a few days, you know, a little over a week later that the denial is made. She is soliciting within the two, and reminding them that you have to get this in before the two years. You can't sit on this over and over again. But they sit on it until, wait until after the two years. The letter of October 6th is the first letter making a demand with the specials of, and making a demand for money. No other, there's no, in May of 2009 there's a letter saying I'm representing her, here's my attorney's lien. In the Shelton case that said that was not a proof of loss to, Shelton v. Country Mutual, that was not a proof of loss to toll anything. So there was no specials or demand or money earlier. She was, yes, she said, send me my stuff and I'll consider it. Here's the two years, but you don't do it. If you don't do it, that doesn't extend everything. Because someone says they'll process their claim, which is a valid claim, there's no reason to deny it prior to two years. The trial judge said, well, why didn't Shelton deny the claim prior to the two years expiring? Well, why would you deny it for two years? There's nothing to deny. There's not even a demand for money of any kind to deny. In the Hermanson case, they denied the claim because they asserted there was a sit-off. There was a $100,000 torque feeser and $100,000 uninsured, uninsured motorist limit. And they said, well, you can't make a claim because the limits match and there's no uninsured motorist claim. So the court said they denied it for that legal reason of a sit-off. Here, there's no reason that she had an injury. She has uninsured motorist coverage. There's no reason to deny it. It's just denied because it's a Tuesday or a Wednesday. There's no reason to deny it. It's within the two years. She has time to present, just like you have time to file a lawsuit against a torque feeser normally within two years. And there's no reason for an insurer to deny it because they can't deny it until the two years pass. But if you don't do it, and here you're represented by an attorney, which puts a higher standard under the law on an insured or the fact that you're represented by counsel who's experienced to handle these type of claims and who's actually the malpractice insurer is the adverse party here representing Lynn Hickey, the white head. They're the ones who are the party really of interest here because this is really the typical malpractice case because that's the one of the most common. If they were to meet a statute of limitations, and here it's a contractual limitation period, but it's a direct analogous. There's a deadline that's enforceable under the law. In the torque case, it's two years. The white head case talked about how legislators had that same limitation for a long period of time, and there's no reason why it shouldn't apply to enforce a contractual two-year limitation for an injury claim, which is an underserved notice, which is just scanning the shoes of the torque feeser. So we have two years, right, under the policy law? What's that? You have two years? Right. Okay, you have two years. What happened within those two years? What happened in those two years? We have a clause that they had notice of the accident, okay? Uh-huh. And then we have Andrea Dunmore, who you see at the log notes are part of the record. Oh, she's the claims representative. Yeah, she's not insured. What? Right, she's the claim rep, not insured. Right, okay. So within two years, we have you're insured communicating somehow with country companies, right? Right. Okay. And so you have this colloquy going on within the two years. Like you might have in a torque claim, too. Same thing. Right. And then after the two years expiration, counsel has been retained somehow, and now there is some correspondence saying these are the damages, these are what we're seeking coverage for. Right. Correct? Which she's retained actually before the two years expires. Okay, fine. But the communication comes after the two years, or does it come before? The demand for the specials comes after the two years. That's correct. Right. Because of some misapprehension about three years instead of two years. She's argued before. Correct. The same attorney, same claim, has argued before it should be three years, and the Supreme Court says she was wrong. And so she thought maybe she had three years, but she acted through. Well, we've gone through. Yeah, that's up and down. Right. Okay. So your view is that there should have been a separate demand for arbitration, correct? Correct. Within the two years. And that's what the Supreme Court Whitehead talked about, how he said a claim is different from the legal action we've determined. So then he sent this very letter of October 6th with the demand, which wasn't even sufficient. It didn't make a demand for arbitration. In the case he just cited that you grant leave to consider, members select versus loose, required a demand for arbitration. There was a request for arbitration, and the insurer argued, well, they used the word request, not demand. And the court said, well, we think request is sufficient. Here we didn't even have that. That was within two years. But you're saying within two years the only thing your company has is, in writing, is a notice of accident? Right. And subsequently all of this dialogue between representative and insurer. And that's what happens many times in a tort lawsuit, where you have to still file a lawsuit within two years. The courts say that negotiations don't toll or limit anything. There's no thing saying don't make a demand for arbitration. We'll extend it while you do this or that. Instead, you've got two years, which they don't even have a duty to do. They don't have a duty to advise what's already in the policy. You only have a duty to read the policy or know the policy of the law. And here she is, an attorney on top of that. Counsel, that's two minutes. And she doesn't do what the courts have all said, making a written demand for arbitration. The Reinhart State Farm, approvingly by the Supreme Court, said you've got to make a written demand for arbitration and name an arbitrator. Even if this letter didn't do either, but even if it had, it would be too late. So there's nothing here to extend it. There hadn't even been a real – I mean, there had been no denial of anything either. I mean, there hadn't been – There hadn't been a denial. There was nothing to deny because she didn't make a demand for any money. Like in Hermiston, they said it was a demand for benefits, and they denied it because of a set-off provision. And then they made a demand for arbitration a demand. And it was six days and 12 days or whatever. So best practices would be, from your viewpoint, is the moment that an insurer makes a notice, gives notice to the insurance company of an accident, that they should also notify the insurance company, and by the way, I'm demanding arbitration in case you deny any claims here under a department. And it happens every day. We see that hundreds of times all the time. It happens every day. Almost all the attorneys in Cook County, you see standard letters. If we can't settle this within two years, we hereby name so-and-so as our arbitrator. I see it every, all the time. And that's what you're, you should know the law. You're paid a significant amount of money to know the law. You know, it's not, well. That is enforceable, considered to be a demand under the language of the policy. Correctly, and it's enforced by the Supreme Court. People could say that two years is too short for tort statute limitations. Why shouldn't we have longer? The legislature has determined otherwise. They've already found it's not against public policy. I mean, you can, as I said, make arguments. Well, why don't we have three years like Wisconsin? Why don't we have five years for certain other torts? Well, there's reasons the legislature, they don't want to have claims just sit out there and not be resolved. They've made their decision. It's an enforceable contract. It deserves to be enforced. It's not against public policy. It's been litigated through numerous appeals. Every time found enforceable. And here we don't even have those circumstances where there was anything. There's still never a demand until, for arbitration here. Thank you. Thank you, Mr. Carlson. Mr. Tierce. Good afternoon, Your Honors. May it please the Court, Counsel, for the Defendant Terry Whitehead, Robert Chalmers from Counsel and Stauffer. If my opponent doesn't ask to reverse, do I win? Because he didn't ask you to reverse. Justice O'Brien, you asked about the arbitration clause. According to Mr. Carlson, it doesn't matter what the arbitration clause says. If you don't demand arbitration within two years, you lose. It's not what it says. It says if we and an insured disagree over whether the insured is legally entitled to recover damages or if we disagree as to the amount of damages to be recovered, then the insured must make a written demand for arbitration. In other words, until there is a disagreement, that would be the condition preceding to the clause, a disagreement as to one of two things, legal entitlement or the amount of damages, until one or the other occurs, the insured under the policy that we just heard about does not need to make a written demand for arbitration. So the actual factual disagreement between the insured and the insurance company can, from your view, take place after the two years. Well, we have section 143.1 that he didn't even mention that the insurance code says that if there is a, here, that was what the circuit court held when he granted my client's motion for summary judgment, that the statute, or the limitation provision in the contract was told from the time the proof of loss required by the policy is submitted until the date the claim is denied. This accident occurred in July 2007. Literally within hours of the accident, it was reported to Country Preferred. In fact, the two passengers, Terry Whitehead's husband and her son, also made UM claims, uninsured motorist claims, which, by the way, were promptly paid by Country Preferred. Why? Because they were like $500 or $1,000, not $162,000 in specials. Big difference. Is that the reason they didn't pay the claim? I don't know. We're not into the bad faith aspect yet. But this Whitehead reported the accident. The claim was opened. It was assigned a claim number. A claim form was sent, signed, and returned. This is the form. It's 502 in the record. You realize you can't see it, but it actually says C502. And it is notice of claim, uninsured motorist covered. And it's filled out, the who, what, when, where, and why of the accident. This we submit under 143.1, told the limitation in the contract until Country denied the claim. Now, we have a 953-page record. This case wasn't tried. It was a summary judgment. 953 pages. There is one document in that record, October 19, 2009, when Country got around to denying the claim. That's when the two-year limitation began. And within that two years, the demand for uninsured motorist coverage was made. Now, this was no surprise to Country before. And your honors asked what happened within two years after the accident. If you go through this 953-page record, and I'm sure you will, there's letter after letter from Andrea Dunmore to the insured inquiring about her health and her status and asking for medical information. And then, you know, typically I represent insurance companies, but every now and then I can talk about insurance companies, double speak. This letter is in the appendix to the reply brief. It's at C693. Andrea Dunmore is writing to Terry Whitehead, November 26, 2008, within two years after the accident. Please contact our office to discuss your open claim for bodily injury under your uninsured motorist coverage portion of your claim. Then the next sentence, please note there is a two-year statute of limitations to present your bodily injury uninsured motorist claim. Well, what was she talking about in the first sentence? She acknowledged this is about your open claim for bodily injury under your uninsured motorist coverage. Then tells her you have two years to make a claim. Obviously, she made a claim. She's inquiring about it. February 13, 2009, this is at C694 in the record. It's also in the appendix to the reply brief. Dear Mrs. Whitehead, please contact me on my direct phone regarding the injury portion of your open uninsured motorist claim for the above-captured auto accident. The last sentence, there's a two-year statute of limitations to present your bodily injury uninsured motorist claim. What was she talking about in the first sentence? She had to say something about presenting a claim in the third sentence. She was talking about the open bodily injury uninsured motorist claim. This was no surprise to the country. They had noticed. They had their statute sentence on a form reported by the policy, denied in whole or in part by the insurer. When was that form presented? November 2007. Within the two years? Oh, yes. The accident was July 21 of 2007. After the claim was reported, this form in blank was sent to the insured, who for whatever reason sent it in November. But it was sent well within the two years. And it started not only that, Your Honor. It refers to the policy number. It refers to the claim number. And that's typed in. The form's printed. The answers to these questions are printed by Terry Whitehead. The policy number and claim number is typed because this is this country's form. It's notarized and sent back. So we have a situation where a country referred was unmistakably aware that a UM claim was made, not just by Ms. Whitehead, by her two passengers, which claims they paid. Whitehead was still treating, and she told this. She told this to Andrea Dunmore. She was never told by Dunmore to make a demand for arbitration. In the spring of 08, she told Dunmore she was still treating and not ready to settle. In the spring of 09, she said she was having back surgery and was not ready to settle. But in no time until October 19, 2009, the country preferred deny the claim. Until then, there was no disagreement on the amount of money. There was no disagreement on legal entitlement. There was no disagreement on anything. The country had not denied the claim. The trial court, you didn't hear anything about the trial court from Mr. Carlson, correctly applied Section 143.1 because the country never denied the claim until October 2009. The plaintiff's position is the insurance required to make a written demand for arbitration by July 21, 2009, notwithstanding what Section 143.1, which is read in every contract of insurance with a limitation, and notwithstanding what their own policy says. The plaintiff does not explain how it could be possible for the insurer to demand arbitration when, without denial or disagreement by the insurer, there was nothing to arbitrate on. The insurer submitted the company-required proof of loss form. Mr. Carlson, on page 9 of his opening brief, says, the form that would satisfy 143.1 is a letter making a written demand for arbitration. Well, that's ludicrous because 143.1 talks about a form required by the policy from the carrier and then the claim is denied in whole or in part, which it wasn't within the two-year period. The statute says that the limitation is told from the date the proof of loss is filed on whatever form is required by the policy until the date the claim was denied in whole or in part. It was denied in whole or in part October 21 of 2009. The plaintiff asserts that the tolling cannot apply because the demand for arbitration was not made within two years of the accident. That argument is a non-starter. Arbitration was not triggered because the conditions preceding for the arbitration clause to come into effect, namely disagreement with the insurer as to entitlement or recovery of damages, had not been satisfied. This court knows that the law provides that an absurd, unjust, or inconvenient result must be avoided. Mr. Carlson basically told this court in no uncertain terms that written demand for arbitration must be made within two years, completely ignoring the arbitration clause in the client's policy, completely ignoring section 143.1 in the insurance code, which was what the trial court here hung its hat on. I would submit to the court, even if the court would say there's no tolling here, because this claim form which country prepared and asked the insurer to fill out doesn't satisfy 143.1. That would be a remarkable result, but if that was the result, then I would say to the court that when the arbitration clause and the limitation clause and the notice provision of this policy are read, they're ambiguous. And this court can look anywhere in the record to affirm, and that was one of the arguments made to the trial court here, that there's an ambiguity. The ambiguity is the arbitration provision and the time limitation conflict. You can't demand arbitration before the conditions preceding are met. There's nothing to arbitrate. Until the insurance company says, you are not entitled to recover, or we disagree with the amount of damages you seek, until one or the other occurs, the arbitration clause has not been triggered. There's no disagreement. Country preferred says, the fact there was no agreement is a disagreement. Again, that's a nonstarter. What's the insurer supposed to do? There was no dimension was still treated, and they were aware of this. There are probably 15 letters in the record that went back and forth between Dunmore and the insurer. The notice that is required by the policy is not supposed to be a trap for the unwary. The notice given is the functional equivalent of a demand for arbitration. At least the Fifth District held that in the Hale case. But when you look at the litany of decisions from Country Mutual, and they've been litigious, almost as litigious as one of my clients with an additional insurance endorsement. It's what keeps us going. The fact is, that Fifth District case is an outlier. But the fact is, it says what it says, and they can't ignore it. It's not a trap for the unwary. And they talk in that case about the claim handling process. The carrier established a claim number, set up a claim file, set out a claim form, and invoked its claim handling process, which is exactly what occurred here. And there's no surprise to Country. When 143-10-1 is properly applied, as it was by the trial court, the limitation provision in this policy did not commence until the claim was denied, October 19, 2009. Following which, in July 10, a timely demand was made. And that was within two years of that denial. Or the October 6, 2009 letter, which led to the October 10, 2009 denial. Now, to say that no denial, there's no demand, again, is a non-starter. The arbitration provision wasn't triggered. 143.1 precluded that. And I would say that what the Supreme Court held, with all due respect to Justice Litton and Justice Holdren, was that the two of you, as the majority in 2011, were wrong. They held nothing else. They held that even though a tort limitation period in Wisconsin is three years, the contractual limitation period is two. And they weren't going to look to the law of another state to determine Illinois public policy. That's what they held. Counselors, two minutes. Thank you. So Justice McDade had it right almost. She tells us that all the time. Well, we prefer that they may have been mistaken. Well, they may have, because the two of you had it right, at least then. And it's true of us all. Justice Kilbride was the one who dissented from the district. I have one further question. Can we quote you on the insurance speak issue? I'll deny I ever said it, but it's one thing about when you're an advocate. You can talk out of both sides of your mouth. We had this call that we were opposing counsel, Counsel Carlson, about best practices. So your position would say that's not necessary. Well, the best practice here was followed. The insured did everything she was asked to do. So I'm talking about the best practice of the attorney, because that's what we're really talking about. To some extent, we're talking about best practice of the attorney advising the client. If you've been retained by a client within that time frame, which maybe not underlined here. But the idea of requesting arbitration at the same time you make a note of it. Well, to arbitrate what? What was the dispute? Well, the contingent request. I don't know if that makes any sense. Well, it doesn't. Because for all I knew, once all the medicals were in, Country Prefer, as the best practice for an insurance company, could have made an offer to settle. They never did. They never did. You've got an injured person here with $167,000 in medical bills and lost time. Looking at a $250,000 policy, she's rear-ended by an uninsured motorist. It's a bad claim for them. Which is why we're probably still talking about it in 2016, because the passengers have been paid. It's the same accident. The same notice. So you have to wonder, well, why are we here? But we are. And we asked the court, for all the reasons we've made known in the brief, that Judge Jarris, who granted summary judgment, I commend him for having a four-page typed order. You don't see that from the trial court, especially on de novo review, where you don't even pay him any deference at all. But we suggest we do, because his rationale is clear, cogent, and we submit correct. So we'd ask the court to affirm. Thank you. Thank you. Mr. Carlson? Thank you, counsel. Just to start off, I do ask the court to reverse the trial. Before I forget that at the end here. And I don't think he's left his insuranceese behind, because he is here for ISB Mutual, another insurer. It's just the opposite coin of the – just a different hat, different insurer today. But real briefly, you know, counsel talks about, you know, she's still treating, you know, that she should have more time because she's still treating. Basically a discovery rule. In a tort lawsuit, the fact that you have injuries, if you've had an injury that manifests itself five years after an accident and you didn't file a suit, you're time barred. If you're still treating, you start going to the hospital a day before the two years expires and you didn't file a suit, you're barred. She, you know, there are all these cases. There's the Wancho case, the Hannigan case, discuss the discovery rule, saying there is no discovery rule on the two-year issue, just like there's no discovery rule in the tort statute limitations. These issues have all been litigated 30 times in the appellate court. The exact same language, the exact same clause in the arbitration clause every time. And every time there was not a disagreement over the value of the claim, like when you pay us this and you pay us that. They didn't do something within two years. The Supreme Court said you have to take this legal action within two years. They settled the two other claims because they reached an agreement. They made a demand and they paid it. The counsel talked about countries sitting on the claim. If they were going to sit on the claim, they would have got the notice that an accident occurred, put it in a file, wait for two years to pass, and then close the file. They didn't do that. They said we're willing to settle your claim. What happened? What's your medical? Well, we don't know yet. We don't have anything yet. There was no demand. Mr. Carlson, I'd like you to respond to the arguments on 143.1. On the tolling? Okay. The tolling requires a proof of loss in the form required by the policy. The Supreme Court has said for the limitation period. The Supreme Court has said for the limitation period, the form required by the policy is a written demand for arbitration, not a claim. So we already know from Whitehead, a demand for arbitration is what's required by the policy to stop the tolling of the limitation period. Because 143 talks about the limitation period and the Supreme Court says a claim, and they talk specifically about the October 6th letter, is not sufficient. And that is even after the two years. And that is not the notice of claim form, which is required by another provision of the policy of notice of the accident. If you look at the notice of claim form, it doesn't talk anything about 140 medical bills. It says nothing about any injury whatsoever. It doesn't make a demand for one dollar. It doesn't say anything that there was any injury, any surgery, any nothing. There's no demand. It doesn't require that. Well, it says a proof of law. What's a proof of loss? A proof of loss would be my loss is this. There's no proof of loss. Or it could be I was injured. What's that? I've suffered a loss. I've been injured. But a proof of loss, look at Coach on Insurance and talking about proof of loss, and the case law is talking about proof of loss. They require the documentation and the damages. Even Judge Jars signed a case law where it talked about demand and the documentation. Here, counsel talks about this country sitting on a 140,000 medical bill. The surgery didn't take place until May 18th of 2009, a year and a half after the clinic had been opened and they're handling it. There was no medical bills. The first medical bill that was 141,000, there's no reference anywhere to these medical bills until after the two years have passed. The surgery doesn't happen until a year and a half later. There's no sitting on anything. There's no demand. The proof of loss is over two years late. There's nothing before that for any demand for $1 for any of these medical bills. The surgery hadn't even occurred yet, so how can there be a proof of loss for that claim for something that even hadn't occurred yet at the time notice of the accident was given? It's a non sequitur. It hadn't occurred. So all these, there's, again, every case has involved the very same language over and over again, and they talk about situations where maybe there's an arbitration demand and if the parties agree it's premature, they agree to stay it. The Van Sickle case, the Hermanson case, they've all talked about the requirement for a demand for arbitration, a final suit within two years, and maybe sometimes they might stay the arbitration until the person has the surgery or they can resolve stuff. Or the fact is you have to, but if the two years is approaching, the best practices is to make your demand for arbitration. The best practices in a court lawsuit is to file within two years, not wait and think, well, maybe they'll excuse my affair to file within two years because we were talking about it or because she's having surgery just recently close to two years, so I can, the legislature will allow me to, the courts will allow me to go beyond the two years because I can come up with this excuse or because I think that some other state law applies or whatever the excuse might be. But the tolling limitation, there is no proof of loss with any damages. There's a notice of an accident, there's been no surgery, there's no, there's not, there's not even a claim that she was injured. It says her vehicle was totaled as to what injury, it's blank. What hospital, blank. Any medicals, blank. There's no, the letter of October 6, 2009 says here I had the surgery, later here's the bills, here's what I incurred, here's my wage loss, here's the tax forms. That's a proof of loss. If you're saying a proof of loss is not the demand for arbitration that the policy requires, that every court has consistently required this written demand, even most recently as the Rhine versus State Farm, the member select case, they talked about how you had to still do within the two years, make a demand for arbitration, name an arbitrator, and they found in that case that there was a demand for arbitration by the word request for arbitration was sufficient. But that was within two years. We don't have any of that here. Even after two years we don't have a request for arbitration. We have nothing. And that's why I think the trial court, which equated the fact of a claim with a demand for arbitration, was wrong when he said claim. And there was still time within two years to resolve it, so why would you deny, the claim was denied for being beyond two years. You wouldn't deny it before two years had passed, just like you couldn't deny a court lawsuit for not being filed within two years a year after the accident occurred. It's a non sequitur. And to allow this, and look at the second half of that clause where it says, or for any agreement is not reached, well that means you would never, you would extend, if they never made a demand for any dollar amount, you would have an unlimited limitation period, contrary to what the Supreme Court said in Whitehead. And there wasn't, so there wasn't an agreement in this case, and they had two years as the Supreme Court itself, and they didn't do what they were required to do, as an experienced attorney, all over these states that do do, every day. Thank you. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And we say a recess until tomorrow morning.